UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAMAR BURTON,

      Plaintiff,      Case No. 1:14-cv-972

v.               Honorable Gordon J. Quist

DANIEL H. HEYNS et al.,

      Defendants.
_____/

## OPINION

   This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983, 1986. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will serve the complaint against Defendant Gust, solely with respect to Plaintiff's claim regarding the use of force by Gust on July 31, 2012. All other claims and Defendants will be dismissed.

## Discussion

   I.   Factual allegations

   Plaintiff Lamar Burton is incarcerated by the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility, though the events giving rise to the complaint

occurred while he was incarcerated at the E.C. Brooks Correctional Facility (LRF). He sues MDOC Director Daniel H. Heyns and the following MDOC employees at LRF: Warden Mary Berghuis; Deputy Warden J. Verboncouer; Inspector S. Walton; Captains B. Evans and C. Smith; Sergeant R. Moore; and Corrections Officers J. Young, J. Bush and L. Gust.

Plaintiff alleges that on July 31, 2012, he approached the officer's desk to obtain some hand soap, which is stocked at the desk for prisoners to obtain as needed. Officer Gust was standing at the desk and Officers Bush and Young were present in the area. Plaintiff made sure that Officer Gust was aware of his presence, and Gust acknowledged him. Plaintiff stated, "excuse me, may I get some soap" as he reached across the desk and put his hand into the soap box. (Compl., docket #1, Page ID#3.) As Plaintiff was pulling his hand away from the soap box, Officer Gust applied a "karate chop" to Plaintiff's arm in a "hard" motion. (*Id.*)

Plaintiff asked to see the sergeant and to have his arm examined by healthcare services, because he had sustained a bruise on his arm. Officer Gust told him to return to his cell. Plaintiff then spoke with a supervising officer, Sergeant Moore, about the incident, and asked for the state to pursue criminal charges against Gust. Moore indicated that he would have Captain Smith come and talk with Plaintiff and that Plaintiff should send a kite to healthcare services regarding any injuries. Plaintiff returned to his cell, but Captain Smith never arrived.

Plaintiff then sent letters to various officials, including the Warden, the Deputy Warden, the Inspector, and the Litigation Coordinator, explaining what had happened to him and requesting that criminal charges be filed against Gust and that Gust be reassigned to another housing unit and/or terminated from his position. Plaintiff also filed grievances about the incident, but he asserts that he never received any meaningful assistance from the foregoing officials.

According to attachments to the complaint, Inspector Evans interviewed Officer Gust and prepared a memorandum to Deputy Warden Verboncouer regarding the incident. (*See* 8/8/2012

Evans Memo. to J. Verboncouer, docket #1-1, Page ID#29.)  Evans accepted Gust's account that Gust "pushed" Plaintiff's arm away from the officer's desk, and concluded that the contact was appropriate.  (*Id.* at Page ID#30.)

On August 22, 2012, Plaintiff was in his cell watching television when Officer Gust approached and stated, "nigger the next time you reach over my desk it's not going to be a karate chop that I give you, I'm going to fry your black ass." (Compl. at Page ID#8.)  Gust placed his hand on his taser as he spoke.  Gust also threw Plaintiff's mail on the floor, saying, "door close[,] count time." (*Id.*)  Plaintiff later filed a grievance complaining about intimidation and its adverse effects on him, emotionally and psychologically.

Plaintiff also asserts that he received a medical detail from healthcare staff exempting him from work duties because of the injury to his arm.  Attached to the complaint is a list of Plaintiff's "medical detail orders," which shows that a nurse placed a "temporary" restriction on Plaintiff for "no work assignment," effective August 1, 2012, to September 22, 2012.[1] (*See* MDOC Medical Detail Orders, docket #1-1, Page ID#71.)  On September 26, 2012, Officer Thompson (who is not a defendant in this action) told Plaintiff to report to his work assignment.  Plaintiff explained that he was on a waiting list to be re-examined for medical restrictions related to his ability to work.  Thompson charged Plaintiff with a misconduct for disobeying a direct order. Thompson also prepared a work evaluation which stated that Plaintiff "refuse[s] to work, had a 7 week medical lay-in.  He is lazy and [a] future bad report could result in termination and room confinement." (Compl. at Page ID#9.)

Captain Evans was the hearing officer for the misconduct hearing.  On October 5, 2012, he adjourned the hearing so that he could speak with Officer Thompson.  On October 6, after

---

[1]On October 3, 2012, Plaintiff was approved for a "light duty" work assignment. (*See* MDOC Medical Detail Orders, docket #1-1, Page ID#76.)

speaking with Thompson, Evans found Plaintiff guilty of the charge and sanctioned him with two days of loss of privileges. Plaintiff alleges that he provided Evans with documents showing that his work restrictions had been renewed, but Evans disregarded the documents.[2] Plaintiff appealed Evans' decision, but the warden denied the appeal.

Plaintiff complains that he fears for his safety and that he continues to suffer "physically, mentally and emotionally" as a result of Gust's assault and intimidating conduct. (*Id.* at Page ID#10.) He also contends that medical staff at the facility have evaluated him for possible nerve damage resulting from the assault by Officer Gust.

As relief, Plaintiff seeks the following: damages; a declaratory judgment that Defendants have substantially burdened his First Amendment rights; and an injunction requiring Defendants to provide "humane" treatment for him and to implement policies and practices that prevent staff from using excessive force. (*See id.* at Page ID#13.)

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] Contrary to Plaintiff's allegations, the attachments to the complaint indicate that the work restriction was not renewed. Instead, it was modified to permit Plaintiff to perform a "light duty" work assignment. (10/3/2012 MDOC Medical Detail Orders, docket #1-1, Page ID#77.)

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Supervisory Liability / Failure to Act

Plaintiff's only allegations against MDOC Director Heyns, Warden Berghuis, Deputy Warden Verboncouer, Inspector Walton, Sergeant Moore and Captain Smith are that they failed to act in response to Plaintiff's grievances and letters of complaint (Defendants Heyns, Berghuis, Verboncouer, Walton) or failed to investigate or take corrective action following the assault by Gust (Defendants Moore and Smith). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff does not allege any unconstitutional conduct by Defendants Heyns, Berghuis, Verboncouer, Walton, Moore, Walton or Smith. Thus, he does not state a claim against them.

### B. Eighth Amendment

#### 1. Excessive force

Plaintiff alleges that Officer Gust forcefully struck him in the arm when Plaintiff tried to reach for some soap at the officer's desk, causing pain and possible nerve damage in Plaintiff's arm. At this stage of the proceedings, the Court concludes that these allegations are sufficient to state an Eighth Amendment claim against Defendant Gust.

#### 2. Failure to protect

Plaintiff also alleges that Officers Bush and Young were present when Officer Gust hit him in the arm. In some circumstances, an officer's failure to protect a prisoner from harm can rise to the level of an Eighth Amendment violation. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to Plaintiff's risk of injury. *Walker*

*v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). In this case, there is no indication that Officers Bush or Young could have done anything to prevent Gust from harming Plaintiff. Gust apparently struck Plaintiff without warning, before even Plaintiff could react; thus, Plaintiff cannot claim that Defendants Bush and Young were deliberately indifferent to a risk of harm. The Court discerns no other possible claim against them. Accordingly, they will be dismissed for failure to state a claim.

3. Medical care

Plaintiff asserts that he requested medical care for his arm shortly after he was assaulted by Gust, because his arm was bruised. Officer Gust told him to return to his cell, and Officer Moore stated that he would speak to Captain Smith and that Plaintiff should send a kite for medical care. Plaintiff returned to his cell as instructed, but Captain Smith never arrived.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's allegations do not satisfy the objective component of the deliberate indifference standard; he does not allege that he faced a serious medical need requiring prompt medical attention. A bruise on the arm does not present a serious need for care. Even assuming that Plaintiff needed *some* form of medical care, the officers were not deliberately indifferent to his needs. They did not deprive him of care or prevent him from obtaining it; instead, they told him to send a kite to healthcare services for evaluation of his injuries. The attachments to the complaint indicate that he received substantial medical attention for his injury from healthcare staff. He was seen by a doctor, who determined that he should be exempt from a work assignment for a period of time and who prescribed Meloxicam (ostensibly for pain or swelling in Plaintiff's arm). (*See* 10/4/2012 Statement of Plaintiff to Hearings Investigator, docket #1-1, Page ID#50; 8/29/2012 Health Care Request, docket #1-1, Page ID#57.) In addition, Plaintiff received an x-ray of his arm, the results of which were "negative." (10/15/2012 MDOC Kite Response, docket #1-1, Page ID#78.) In short, none of the facts alleged indicate that Defendants were deliberately indifferent to a serious need for medical care. Thus, insofar as Defendants failed to provide such care, Plaintiff does not state an Eighth Amendment claim.

#### 4. Work assignment

Plaintiff implies that an officer who is not a defendant in this action endangered his health by ordering him to report to a work assignment, even though Plaintiff was waiting for renewal of a medical detail that would exempt him from work.  After Plaintiff refused, the officer charged him with a misconduct for disobeying an order, and Defendant Evans found Plaintiff guilty of the misconduct.  Like Plaintiff's claim concerning the failure to provide immediate care for his arm, his claim with respect to the work assignment fails to satisfy the objective component of an Eighth Amendment claim.  He alleges no serious risk of harm from being required to work seven weeks after his injury, let alone that any of the named Defendants were aware of such a risk and were deliberately indifferent to it.  Indeed, Plaintiff's work restriction expired a few days before he was required to work, and that restriction was not renewed.  Approximately one week after Plaintiff was charged with a misconduct, and before he was convicted, a medical provider determined that Plaintiff could perform a "light duty" assignment.  (*See* 10/3/2012 Medical Detail Orders, docket #1-1, Page ID#77.)  Plaintiff does not indicate how the assignment given to him would have posed a risk of harm.  Thus, the officer's decision to order Plaintiff to work, and Defendant Evans' decision that Plaintiff committed a misconduct by failing to comply that order, did not violate Plaintiff's rights under the Eighth Amendment.

#### 5. Verbal harassment and intimidation

Likewise, Defendant Gust's statements and threats do not state a claim under the Eighth Amendment.  Verbal harassment, although unprofessional and reprehensible, does not rise to constitutional dimensions.  *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Williams v.*

*Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude); *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

### C. Due Process

#### 1. Misconduct proceedings

Plaintiff complains about the fact that Captain Evans found him guilty of a misconduct for disobeying a direct order and then sanctioned him with two days of lost privileges, despite the fact that Plaintiff presented evidence that he was not required to go to work. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated a protected interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him

> to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his misconduct conviction resulted in the loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

identified any significant deprivation arising from his conviction. Two days of lost privileges is not an atypical and significant hardship. *Ingram v. Jewel*, 94 F. App'x 271, 273 (6th Cir. 2004) (fourteen day loss-of-privileges sanction did not impose an atypical, significant deprivation); *see also Wolff*, 418 U.S. at 571 n.19 ("We do not suggest . . . that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."). Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram*, 94 F. App'x at 273.

### 2. Work reports

Plaintiff also contends that he received "negative programming reports" in connection with the misconduct conviction. (Compl., docket #1, Page ID#10.) Plaintiff ostensibly refers to the work evaluation by Officer Thompson, who reported that Plaintiff is lazy and refuses to work. Plaintiff does not indicate how the negative work reports impacted him, however. Even if they adversely impacted his ability to obtain another work assignment, he does not state a claim because he does not have a constitutional right to, or a protected interest in, a prison job. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("no prisoner has a constitutional right to a particular job or to any job"). Thus, Plaintiff does not state a due process claim.

### D. Discrimination

Plaintiff contends that his allegations involve "racial discrimination" and that Defendants denied him equal protection. (Compl., docket #1, Page ID##5, 6.) Discrimination is generally prohibited by the Equal Protection Clause of the Fourteenth Amendment, which

"commands that no state shall deny to any person within its jurisdiction the equal protection of the laws." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp.*, 470 F.3d 286, 298 (6th Cir. 2006) (internal quotation marks omitted). "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Id.*

Plaintiff contends Defendant Gust verbally harassed and intimidated him, throwing his mail on the floor and threatening him while using a racial slur. Absent meaningful harm or an accompanying violation of rights, verbal harassment and intimidation are not sufficient to state a claim. *See Jones v. Porter*, No. 99-1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *see also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (holding that verbal harassment and abuse do not state a claim under § 1983). If accompanied by "harassment or a violation of established rights," a racial epithet "may amount to a separate equal protection violation." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1013 & n.61 (5th Cir. 2003). In this case, however, Plaintiff does not allege any meaningful injury or accompanying violation of rights that would give rise to an equal protection claim. Gust allegedly threw Plaintiff's mail on the floor, but Plaintiff does not allege any significant harm as a result of those actions. *See Price v. Lighthart*, No. 1:10–cv–265, 2010 WL 1741385, at *2 (W.D. Mich. Apr. 28, 2010) (holding that an

allegation that a prison official used racial slurs and threw the prisoner's property on the floor does not violate the Fourteenth Amendment's guarantee of equal protection).

Furthermore, there is no plausible factual basis from which to infer that any of the other conduct alleged in the complaint (for example, Gust's decision to strike Plaintiff on the arm, Defendants' responses to that incident, the misconduct conviction, and Defendants' responses or lack of response to his complaints, grievances and appeals) involved discriminatory treatment, let alone discrimination on the basis of race. Consequently, Plaintiff does not state an equal protection claim.

### E. Access to the Courts

In his request for relief in the complaint, Plaintiff states that Defendants have burdened his First Amendment rights, and he requests an order prohibiting Defendants from retaining his "legal material" and from denying him access to the courts under the First Amendment. (Compl., docket #1, Page ID#13.) It is well established that prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey*

*v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff has not alleged any facts regarding a non-frivolous legal claim that he is unable to pursue as a result of Defendants' actions. Thus, he does not state an access-to-courts claim.

### F. Retaliation

Plaintiff alleges that his grievances were denied and claims that the grievance respondents retaliated against him by labeling him a "liar" and accusing him of making "false accusations" against Officer Gust. (Comp., docket #1, Page ID#9.) Plaintiff apparently refers to one of the responses to his grievances, in which the respondent stated that the grievance appeared to have been filed "in retaliation of an incident alleged to have occurred in July during which the prisoner made other false accusations against the same Officer." (Step II Grievance Response, docket #1-1, Page ID#32.).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged

in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prisoner grievance is protected conduct, but the denial of a grievance is not an adverse action. *See Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("[T]he mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."); *accord Gordon v. Benson*, No. 1:12-CV-295, 2012 WL 2522290, at *9 (W.D. Mich. June 28, 2012); *Alexander v. Fritch*, No. 07–1732, 2010 WL 1257709, at *18 (W.D. Pa. Mar. 26, 2010). To the extent that Plaintiff complains about the statements in the grievance response, he does not indicate how these statements adversely impacted him. Thus, the foregoing allegations are not adequate to state a retaliation claim.

### G.  Conspiracy

Plaintiff also claims that Defendants conspired with one another. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that

allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's claim of conspiracy is conclusory and speculative. His allegations merely describe a number of discrete incidents involving different individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Accordingly, Plaintiff fails to state a plausible claim of conspiracy.

Plaintiff also purports to state a claim under 42 U.S.C. § 1986, which imposes liability on those who have knowledge that "any of the wrongs conspired to be done, and mentioned in section 1985 of this title are about to be committed" and who neglect or refuse to prevent them. *Id.* To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Just as Plaintiff fails to state a conspiracy claim under § 1983, he also fails to state a claim of conspiracy

under § 1985(3). His allegations are wholly conclusory and devoid of any facts from which to infer that Defendants conspired to violate his rights. "Without a violation of section 1985(3), there can be no violation of section 1986." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992). Thus, Plaintiff also does not state a claim under § 1986.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that all Defendants other than Defendant Gust will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Gust, solely with respect to the claim under § 1983 regarding Defendant Gust's use of force against him. All other claims will be dismissed.

An Order consistent with this Opinion will be entered.


Dated:  December 12, 2014                         /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE